Tamir W. Rosenblum
Haluk Savci
MASON TENDER DISTRICT
CONUCIL OF GREATER NEW YORK
520 Eighth Avenue, Suite 650
New York, New York 10018
(212) 452-9451

Counsel for Plaintiffs

**JUDGE KARAS**

**14 CV 9714**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

DANIEL TORRES, MANUEL VICENTE, CARL
CLARK and RAMIRO TOLEDO,

                         Plaintiffs,

    - against -

LOCAL 660, UNITED WORKERS OF AMERICA

                         Defendant.

------------------------------------------------------------X

**COMPLAINT**

## INTRODUCTION

This is an action brought for breach of the federal duty of fair representation based on the conduct of a union, United Workers of American, Local 660, in punishing employees for voting for representation by a different union, Waste Material, Recycling, and General Industrial Local 108. Local 660 negotiated a new collective bargaining agreement (the "CBA") with an employer in the private sanitation business, Action Environmental Systems, LLC. ("Action"), with the hope that it would persuade employees to vote for continued Local 660 representation. Then,

when employees exercised their right to vote in favor of Local 108 representation, Local 660 illegally thwarted implementation of the CBA in retaliation for the employees' lawful vote.

As a result of this conduct, Local 660 is liable to Plaintiffs under Section 301 of the Labor Management Relations Act of 1947 (the "LMRA"), 29 U.S.C. Section 185, for all damages plaintiffs have suffered as a result of defendant's misconduct. The case is brought as a class action on behalf of all employees in the bargaining unit who would have benefited from the new collective bargaining agreement had its implementation not been illegally prevented.

### THE PARTIES

1. Plaintiff Daniel Torres works as a "Helper without a CDL" in the employ of Action, meaning he works on the garbage truck assisting the driver collect disposable material from Action's customers and does not maintain a license to drive the truck. At all relevant times up until October 16, 2014, Local 660 represented him for purposes of collective bargaining. Had the CBA been implemented, the new minimum rate for Helpers without CDL's would have provided him a raise. Mr. Torres resides at 1330 Vreeland Avenue, Bronx, NY 10461.

2. Plaintiff Manuel Vicente is a "CDL Driver" in the employ of Action, meaning he drives a garbage truck requiring a Commercial Driver's License. At all relevant times up until October 16, 2014, Local 660 represented him for purposes of collective bargaining. Had the CBA been implemented, the new minimum rate for drivers would have provided him a raise. Mr. Vicente resides at 441 Leland Avenue, Bronx, New York 10473.

3. Plaintiff Carl Clark is a "CDL Driver" in the employ of Action, who at all relevant times up until October 16, 2014 Local 660 represented for purposes of collective bargaining. Had the CBA been implemented, the new minimum rate for drivers would have provided him a raise. Mr. Clark resides at 450 East 169th Street, Bronx, New York 10456.

4.   Ramiro Toledo is a "Mechanic A" in the employ of Action, meaning he has the highest level of proficiency among mechanics in Action's employment. At all relevant times up until October 16, 2014, Local 660 represented him for purposes of collective bargaining. Had the CBA been implemented, he would have received a two percent raise on July 1, 2014. Mr. Toldeo resides at 21-70 Walton Avenue, Apartment 4A, Bronx, NY 10453.

5.   Defendant Local 660 is a labor organization within the meaning of 29 U.S.C. Section 152(5) which previously represented a bargaining unit of employees in the employ of Action. Local 660's principal place of business is located at 31 South Street, Suite 3S-3, Mount Vernon, New York, 10550.

## JURISDICTION AND VENUE

6.   This Court has jurisdiction over this action under Section 301 of the Labor Management Relations Act, 29 U.S.C. §185, as well as under 28 U.S.C. §§ 1331 and 1337.

7.   Venue also lies in this judicial district under 28 U.S.C. § 1391(b) because the Defendant maintains offices in this judicial district.

## STATEMENT OF FACTS

8.   Since on or about at least July 1, 2011, Local 660 has been the collective bargaining agent for a unit of employees working at certain Action facilities, which became defined through proceedings before the National Labor Relations Board ("NLRB") as follows:

> Included: All full-time and regular part-time laborers, pickers, sorters, traffic controllers, mechanics, mechanic helpers, equipment operators, welders, recycling drivers, and helpers, roll off drivers, tractor trailer drivers and painters at the following locations: 315 Casanova Street, Bronx NY, 400 Casanova Street Bronx, NY, and 941 Stanley Avenue, Brooklyn, NY.
>
> Excluded: All other employees, including the billing clerk/cash management and accountants receivable position, guards, and professional employees and supervisors as defined in the [National Labor Relations] Act.
>
> (the "Unit").

3

9. Where a collective bargaining agreement is in place, other unions (such as Local 108 in this case) may generally file a petition only during an "open period" occurring 60 to 90 days before the expiration of the contract. Here, the Local 660 predecessor collective bargaining agreement was due to expire on June 30, 2014.

10. On or about April 21, 2014, during the relevant open period, Local 108 filed a timely petition with Region 2 of the NLRB ("NLRB Region 2") seeking to displace Local 660 as the bargaining representative for the Unit. After a number of efforts by Local 660 to delay processing of the petition, Region 2 set June 13, 2014 as the date for the secret ballot election among the employees to choose a collective bargaining representative.

11. Local 660 had little support among employees in the Unit and, thus was in no position to credibly threaten a strike or other activity that would push the employer to significantly improve the terms and conditions of employment under a new contract.

12. However, precisely because of Local 660's weakness, it tended to be favored by sanitation industry employers as a collective bargaining counterpart. Thus, although there had been no effort by Local 660 to organize employees to push for a good contract, on June 10, 2014, the employer effectively gifted Local 660 a beneficial new agreement, presumably as an effort to stave-off the increasing likelihood of a Local 108 victory in the upcoming secret ballot election. On that day, in one negotiating session, the parties reached substantive agreement on the full terms of the CBA and signed it without any conditions precedent to its implementation, such as a requirement that it be ratified by employees.

13. Under the CBA, the rates of pay for all classifications of employment increased. For example helpers without CDL's went from $13 an hour to $15 an hour, all

4

classification drivers went from $20 an hour to $22.75 an hour, and all employees above the minimum rate were to receive a two percent increase.

14. Further, the rates for new hires were substantially improved, increasing from 90% of the job rate during the first year of employment to one dollar below the job rate for a period of only 90 days (after which they are elevated to the full rate).

15. Having by dint of their weakness rather than strength secured a favorable new agreement, Local 660 immediately began campaigning among employees to encourage their vote in favor of its continued representation. The campaign Local 660 ran was about only one thing: employees should vote for them to obtain the benefit of the CBA.

16. There is one sense in which a variation of what Local 660 said would have been legal. It was permitted to tell employees that if Local 108 won the election, the employer would have to maintain the terms set forth in the CBA only until such time as Local 108 was certified as the new representative and negotiated a new agreement. In effect, Local 660 was allowed to tell employees that the CBA might be short-lived without it.

17. Taken literally, Local's 660's contention that the contract would not go into effect without an NLRB vote in its favor was entirely illegal. A union cannot effectively use an NLRB secret ballot election as a ratification vote for a new contract because it is bad faith and discriminatory under the federal duty of fair representation for a union to renounce an agreed-upon contract in retaliation for employees choosing a different collective bargaining representative. Thus, while it was lawful for Local 660 to inform employees that if they voted for Local 108 they were at risk of ultimately ending up with different employment terms; it was not lawful for Local 660 to tell employees that if Local 108 won, Local 660 would refuse to implement the CBA, which was precisely what they ultimately did.

18. On June 11, 2014, Local 660 held a series of meetings with employees at Action's offices in which it explained the CBA and informed them that in order to work under it they had to vote for Local 660 in the NLRB election. No ratification vote was held. Between the time of these meetings and the secret ballot election, Local 660 campaigned uninterruptedly—and, if anything, with increased intensity—on the claimed advantages of the CBA.

19. On June 13, 2014, Local 108 won the secret ballot election by a vote of 40 in favor of it, 21 in favor of Local 660, and one in favor of no union representation.

20. On information and belief, Local 660 has since then never returned to the facility to provide any representational services. It never told the employees there was any reason why the CBA would not go into effect—and there was none.

21. On June 20, 2014, Local 660 filed utterly frivolous election objections, thereby delaying Local 108's certification as the new collective bargaining representative and extending Local 660's tenure as collective bargaining representative—thereby also extending Local 660's liability in this case.

22. Contrary to its express terms, the CBA did not go into effect on July 1, 2014.

23. On August 11, 2014, NLRB Region 2 convened a hearing on Local 660's objections. The proceeding was a charade. Local 660 called a single witness (a barred former member of the Teamsters, Vinny Sombrotto, who is subject to a anti-corruption injunctions issued by this Court, and who testified that that he was only there as a Local 660 "consultant". Sombrotto admitted that he had no support for the sole allegation at issue in the objection: that Local 108 had paid employees to vote for it. He nonetheless proceeded to blatantly fabricate a

6

story about a Local 108 organizer telling employees Local 108 was paying for votes—the fabrication being so complete as to include a tumultuous scene in an Action-owned building that Local 108 representatives had never entered, were not allowed to enter, and which numerous employees were in a position to verify they had not entered because at that time all of Local 108's organizing staff was on the public streets with scores of Action employees chanting campaign slogans.

24. Sombrotto further inexplicably refused on at least seventeen different occasions to answer questions posed to him by opposing counsel despite being repeatedly ordered by the hearing officer to do so.

25. On August 26, 2014, NLRB Region 2 issued its report overruling Local 660's objections.

26. On September 9, 2014, Local 660 filed exceptions to the NLRB Region 2 decision based on the groundless contention that Region 2 was not allowed to take into consideration Sombrotto's repeated refusal to respond to questions duly posed to him on cross examination.

27. Local 660's exceptions further delayed Local 108's certification as the collective bargaining representative, and thereby also further extended Local 660's tenure as employee representative for the Unit and liability in this case.

28. On or about August 19, 2014, Local 108 forwarded to Local 660 a petition signed by 37 employees in the Unit demanding that, as their still extant collective bargaining representative, Local 660 take action to implement the CBA. Neither Local 108 nor the employees received a response.

29. Local 108 representatives ultimately learned that Action was taking the position that it had not implemented the CBA on July 1, 2014—as required under its terms—because Local 660 had informed it that the CBA was not ratified. Nothing in the CBA made its implementation conditional on employee ratification; and other than the NLRB election, no vote of any kind had taken place among the employees of the Unit.

30. On October 16, 2014, the NLRB adopted Region 2's order and certified Local 108 as the new collective bargaining representative for the Unit. The employees continue to be subject to "status quo" employment terms that maintain the conditions from Local 660's predecessor agreement with Action—not the CBA.

## ALLEGATIONS RELATED TO CLASS ACTION

31. The Plaintiffs seek certification of a class consisting of all employees who at any time between July 1, 2014 and such time as Action is relieved of any and all obligations to maintain the "status quo" terms of conditions of employment, were members of the collective bargaining unit covered by the June 13, 2014 National Labor Relations Board secret ballot election.

32. At least 60 people are members of the class, making it too numerous for joinder to be practicable.

33. The questions of law and fact regarding Local 660's failure to cause the implementation of the new collective bargaining agreement are common to the entire class.

34. The claims of Plaintiffs, as members of the bargaining unit, are typical of the claims of the class.

35. The Plaintiffs will fairly and adequately represent the interests of the class.

36. The class is specifically appropriate for certification under Rule 23(3) of the Federal Rules of Civil Procedure because Plaintiffs' claims regarding Local 660 not causing the implementation of the CBA and/or actively thwarting it, are the same as those of all other members of the class, such that questions of law or fact common to the class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## CAUSE OF ACTION

37. Plaintiffs restate and re-allege the allegations set forth in paragraphs 1 to 37 of the Complaint, as though set forth in full herein.

38. Local 660 breached its obligations to the plaintiffs (and all members of the class) by in bad faith informing Action that the CBA was not "ratified" and therefore should not be implemented, knowing full well that no ratification vote had occurred and that none was required as a condition of the CBA going into effect. Such efforts to thwart implementation of the CBA was taken in retaliation for employees voting in favor of Local 108 in the secret ballot representation election. Indeed, to the extent Local 660 in anyway took seriously its own claim that a ratification vote had occurred, it was treating the secret ballot representation election itself as that vote and thereby expressly denying employees the improved terms and conditions of employment to which they were entitled under the CBA because of their legally protected vote for Local 108 representation.

39. After the election, Local 660 further took no action to implement the CBA, including ignoring the August 19, 2014 employee petition demanding the CBA's implementation.

40. Far from taking action to benefit the Unit as a whole, Local 660 further punished Unit employees for their vote for Local 108 by pointlessly delaying Local 108's

9

certification through the filing of frivolous objections and appeals of same. By doing so, Local 660 also furthered the term of its own representational obligations to the Unit, and thus its liability in this case.

41. Other than filing utterly frivolous objections, perjuring itself at the objections hearing, and filing baseless exceptions to the initial NLRB Region 2 ruling, Local 660 took no actions whatsoever in furtherance of its representational obligations to Unit employees from the time of the secret ballot election through Local 108's ultimate certification as the new collective bargaining representative.

42. For all of these reasons, Local 660 acted in an arbitrary, discriminatory, and bad faith manner towards the Plaintiffs and the class and is liable to them under the federal duty of fair representation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests this Court enter judgment in their favor:

A. Enjoining Defendants to make Plaintiffs whole for all economic losses they have suffered as a result of Defendant's unlawful conduct.

B. Awarding Plaintiffs interest on such amounts;

C. Awarding Plaintiffs attorneys' fees; and

D. Granting Plaintiffs such additional relief as this Court deems proper.

## JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

Dated: New York, New York
December 10, 2014

                                    Respectfully submitted,

                                    Tamir W. Rosenblum
                                    MASON TENDERS DISTRICT
                                    COUNCIL OF GREATER NEW YORK
                                    520 Eighth Avenue, Suite 650
                                    New York, New York 10018
                                    (212) 452-9451

                                    Counsel for Plaintiffs